| iWALTZER, Justice,
dissenting.
I respectfully dissent, because I do not believe the jury’s verdict on liability was shown to have been manifestly erroneous. I would amend the judgment, however, reducing the award to $15,000, which my research reveals to be the highest reasonable award under the facts of this case.
Ms. Jordan first presented to the office of Dr. Ryan on Friday, 4 December 1987, with complaints of urinary frequency and a yeast infection. Ms. Jordan also requested birth control pills' on this date. After an examination and a diagnosis indicating a urinary tract infection and a yeast infection, Dr. Ryan prescribed Septra pills and Monistat cream. On the following day, Saturday, 5 December 1987, Ms. Jordan telephoned Dr. Ryan’s office with complaints of increased genital itching. Dr. Ryan promptly returned Ms. Jordan’s telephone call and instructed Ms. Jordan to continue taking the medication as directed and to call him on Monday, 7 December 1987 if she continued to have any problems. On |2Monday, Ms. Jordan informed Dr. Ryan that she was experiencing vaginal genital itching and burning worse than she was previously experiencing and a new symptom, her “throat was starting to get sore.” Ms. Jordan testified that she wanted an appointment that day, but Dr. Ryan informed her that he was booked and offered her an appointment for the next day, Tuesday, 8 December 1987. Ms. Jordan informed Dr. Ryan that she could not see him on Tuesday, 8 December 1987 because this would interfere with her class schedule at Xavier, and elected to see Dr. Ryan on Wednesday, 9 December 1987. Since the doctor did not communicate any urgency to Ms. Jordan and, indeed, refused to see her the day she called, Ms. Jordan was lulled into the belief that the onset of a new symptom, sore throat, was not medically significant. Ms. Jordan attended her classes at Xavier on Monday, 7 December 1987, Tuesday, 8 December 1987, and Wednesday, 9 December 1987. On her visit with Dr. Ryan Wednes *1038 day, Ms. Jordan complained of two additional symptoms, blurred vision and trouble keeping lipstick on her lips, increased genital itching and burning, and a sore throat and indicated she thought she was having an allergic reaction to the medication. Ms. Jordan also showed Dr. Ryan splotches on her right arm. At this time, Ms. Jordan’s rash was just starting and had not broken out all over. Dr. Ryan took her off the Septra medication and performed a vaginal examination of Ms. Jordan on 9 December 1987. He noted two herpetic type ulcerations on the labia and told Ms. Jordan that she might have herpes, performed a herpes culture, and prescribed Corticaine cream for the lesions and the pain.
On Thursday, 10 December 1987, Ms. Jordan applied Benadryl and Calamine lotion to the blotches on her right arm for the first time. Later that evening, the rash on Ms. Jordan’s right arm began to break out. all over her body. I3TMS marked a significant worsening of her condition from the previous day. On the early morning of Friday, 11 December 1987, Ms. Jordan presented to the Humana Hospital emergency room in New Orleans where she was treated with a steroid, Amoxicillin, and Benadryl. The emergency room physician instructed Ms. Jordan to contact Dr. Ryan if her condition did not improve within two days. However, Ms. Jordan never attempted to contact Dr. Ryan after either the 9 December 1987 office visit or the 11 December 1987 visit to the Humana Hospital of New Orleans emergency room. Apparently the jury believed that Ms. Jordan had lost faith in Dr. Ryan by this time, believing him to be unconcerned with her condition. This belief is confirmed by the fact that Dr. Ryan failed even to chart Ms. Jordan’s symptoms, her visits on the 5th and 7th of December or her calls.
Later that Friday, 11 December 1987, Ms. Jordan contacted her mother, and they decided that Ms. Jordan should return home to Augusta, Georgia. When she arrived on Saturday, her mobility was seriously restricted, her condition continued to worsen, and she developed serious and significant outbreak of blisters on her mouth and body, typical of Stevens-Johnson Syndrome. On Sunday, 13 December 1987, four days after her last contact with Dr. Ryan, Ms. Jordan went to the Humana Hospital in Augusta and was diagnosed with Stevens-Johnson Syndrome. Ms. Jordan was hospitalized at Humana in Augusta for three days in intensive care and for a total of sixteen days.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), p. 4, 666 So.2d 612, 614. Ferrell v. Fireman’s Fund Ins. Co., 94r-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State Through Dept. |4of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.... When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; ... Rosell v. ESCO, 549 So.2d 840, 844^845 (La.1989).
Courts of appeal are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. State Through Dept, of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State Through Dept, of Transp. and Development, supra.
That standard applies in medical malpractice suits. Richoux v. Metropolitan Gastroenterology, 522 So.2d 677 (La.App. 5 Cir. 1988); Malbrough v. Hamsa, 463 So.2d 639 (La.App. 5 Cir.1984), writ denied 466 So.2d 472 (La.1985), 466 So.2d 474 (La.1985); Protti v. Tolmas, 459 So.2d 614 (La.App. 5 Cir. 1984); Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
Having reviewed the record as a whole, I find no manifest error in the jury’s verdict. In this medical malpractice action, Ms. Jordan sustained her two-fold burden of proof, having established by a preponderance of the evidence that the doctor’s treatment fell be *1039 low the ordinary standard of care required of physicians in his medical specialty, and this fault caused her to have been denied appropriate treatment for her allergic reaction from its onset until her admission to the Augusta Hospital. La. R.S. 9:2794; Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1276 (La.1991); Smith v. State Through Dept, of Health and Human Resources Admin., 523 So.2d 815, 819 (La. 1988).
IsExpert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant possessed the requisite degree of skill and knowledge, or failed to exercise reasonable care and diligence. Martin, supra at 1277. This rule has been refined by the Louisiana Supreme Court in Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), p. 1, 643 So.2d 1228, 1230:
As a general rule, a plaintiff can prevail under such circumstances when a defendant/physician or a defense expert testifies regarding the standard of care, and the objective evidence at trial is such that a lay jury can infer negligence from the facts. Accordingly, the court of appeal was in error when it stated that the absence of expert testimony by a plaintiff regarding a breach of the standard of care precludes success in a medical malpractice action. A plaintiff must also establish, with adequate evidence, however, a causal connection between a defendant’s negligence and the plaintiffs injuries.
I agree with the majority’s conclusion that Dr. Ryan was not negligent in having prescribed Septra for Ms. Jordan’s apparent urinary infection. I also agree that he was not negligent in having failed to diagnose her symptoms as indicative of Stevens-Johnson syndrome. However, the record supports a finding that Dr. Ryan deviated from accepted medical standards when, on having been advised of the onset of a new allergic symptom, Ms. Jordan’s sore throat, he did not immediately begin treating her for an allergic reaction. Such treatment, while it would not have prevented onset of Stevens-Johnson syndrome, would have provided some degree of relief from her symptoms and confidence is her treatment, and would have avoided the anxiety that led Ms. Jordan to go to the New Orleans emergency room and, eventually, to the hospital in Georgia.
Viewing the evidence in accordance with the Lewis ¡Stobart IRosell standard, I would find that Ms. Jordan clearly proved that Dr. Ryan’s failure to begin at least on Monday to treat Ms. Jordan for an allergic reaction constitutes a departure lefrom the standard of medical care. Dr. Hoffman testified that when a patient complains of new symptoms (the sore throat and increased itching and burning in this case), she should be seen immediately. Ms. Jordan was not seen immediately, and the jury could have determined that the severity of her symptoms and her level of discomfort and anxiety were increased because of this delay. It is not reasonable to conclude, however, that the symptoms were caused by the delay. The jury could have concluded from the evidence that Dr. Ryan’s failure to see Jordan on Monday, when she called complaining of new symptoms, and his failure to refer her to another physician who could see her on that day, led her to believe that time was not of the essence, and that she could safely wait an additional day, until Wednesday, to see Dr. Ryan, thus not disturbing her college exam schedule. The jury could have inferred a lack of concern on Dr. Ryan’s part from the fact that he had not charted Ms. Jordan’s physical complaints of allergic reaction when she made those complaints on the 5th, 7th and 9th of December, complaints which Dr. Hoffman testified should have triggered discontinuance of Ms. Jordan’s Septra medication. This deviation from Dr. Hoffman’s standard resulted in a delay in the administration of steroid treatment which was eventually commenced successfully in the Augusta Humana Hospital.
The jury’s award of $500,000 in damages is, I believe, unsupported by the facts of this case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on Ms. Jordan is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); *1040 Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963,169 So.2d 64 (1964); Lóm-emele v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a presort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., supra.
Ms. Jordan’s physical pain and anxiety concerning her undiagnosed condition was before the jury, as was the sole residuum of disfiguring splotches on her legs. While her psychological problems related to Stevens-Johnson syndrome apparently resolved in January of 1995, her psychiatrist testified that he saw her five times from 20 September 1988 through 23 June 1989 for issues arising out of the syndrome. It is apparent that the jury failed to make the distinction between damages arising out of the Stevens-Johnson Syndrome (for which Dr. Ryan is not responsible) and damages arising out of his failure to diagnose an allergic relation (for which Dr. Ryan is responsible.)
The award of $500,000 for delay in recognition and treatment of the allergic reaction bears no reasonable relationship to the elements of the proved damages. My review of the entirety of the evidence viewed in the light most favorable to Ms. Jordan indicates that a rational trier of fact could not have fixed the award of general damages at the level set by the jury. This is one of those “exceptional cases where such awards are so gross as to be contrary to right reason.” Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987). Youn v. Maritime Overseas Corp., supra. The standard of review for damage awards | ¿requires Dr. Ryan to make a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., supra. I believe that Dr. Ryan sustained this burden.
Having found the jury abused its great, even vast discretion in awarding damages, I have reviewed the jurisprudence in order to determine the highest possible award, pursuant to the Coco standard.
In Walker v. Maybelline Co., 477 So.2d 1136 (La.App. 1 Cir.1985), the court sustained an award of $426,584.35 against Maybelline, which was found to have had knowledge of the likelihood of pseudomonas infection where the eye is scratched by a mascara applicator, yet failed to warn its users of this danger. Ms. Walker scratched her eye with a Maybelline mascara wand and was found to be blind in one eye, in constant pain, and likely to lose the sight in her other eye. She lost her job and was forced, because of the injury, to take a job at a reduced rate of pay. The court affirmed the award of past medicals ($37,434.35), future medicals ($25,000), permanent disfigurement ($50,000), past pain and suffering ($150,000), future pain and suffering ($100,000), loss of earning capacity ($63,000) and expert fees ($1150). Thus, the highest general damage award in this context is $250,000. Unlike Ms. Jordan, Ms. Walker’s disability continues, and causes her “constant pain” and the likely total loss of sight. Further, Maybelline was found to have caused the reaction, not merely to have exacerbated its consequences. Thus, this award is not controlling in the instant case.
In Sellers v. Breaux, 422 So.2d 1231 (La. App. 1 Cir.1982), plaintiff had a severe allergic reaction and bronchitis caused by inhalation of creosote fumes. Her injuries required eight days in hospital. She had a second but less severe |9reaction, and her disability was resolved about a month and a half after the initial exposure. The jury-awarded a total of $5,000, including general damages of $2,815.35. This was affirmed.
King v. Our Lady of the Lake Regional Medical Center, 623 So.2d 139 (La.App. 1 Cir.1993), which is cited in Eason’s Louisiana Quantum Study and Personal Injury *1041 Law, affirmed a $1500 award for medical battery where codeine was administered to a patient having a known codeine allergy. There, the causation evidence was weak, and the trial court found no damage had been sustained as a result of the administration of the codeine.
In Leday v. Clairol, Inc., 571 So.2d 866 (La.App. 3 Cir.1990), the court reversed an award of $1000 in general damages for a plaintiff who did not perform a “patch test” that could have discovered her allergy to the hair product. Plaintiff suffered persistent hair loss and acute dermatitis which resolved itself after treatment over a 2½ month period.
In Richard v. Walgreen’s Louisiana Company, 476 So.2d 1150 (La.App. 3 Cir.1985), the trial court awarded general damages of $4000 for allergic reaction to overdose of anti-nausea suppositories caused by improper filling of the prescription by Walgreen’s. Liability was stipulated, and only quantum was disputed. Within 3 hours of administration of the suppository, the child was heavily sedated and could not be awakened in the morning. When he awoke, the child had no muscle control and could not stand or speak. The child was hospitalized for observation, but had improved by that time and was released to his parents with instructions to administer fluids. He suffered no permanent damage. The appeal court reduced the general damage award to $2,000 in this pre-Youn decision.
Iioln the case at bar, the basic damage to Ms. Jordan, the onset of the syndrome, was not caused by Dr. Ryan’s deviation from the standard of care. That deviation caused only the increased discomfort and anxiety resulting from the delay in diagnosis from Monday, 7 December when Ms. Jordan complained of a new symptom, sore throat, until Sunday, 13 December, when Humana Hospital in Augusta diagnosed the syndrome. Under these facts, the highest reasonable award for that six day delay in diagnosis would be $15,000.