666 So.2d 612 (1996)
Jerry Wayne HILL
v.
MOREHOUSE PARISH POLICE JURY and Titan Indemnity Company.
No. 95-C-1100.
Supreme Court of Louisiana.
January 16, 1996.
*613 Peggy Dean St. John, Carolyn Jeanelle Smilie, Gold, Weems, Bruser, Sues & Rundell, Alexandria, for Applicant.
Travis M. Holley, Bastrop, for Respondent.
CALOGERO, Chief Justice.[*]
We granted writs in this case for the same reason as that addressed in Clement v. Frey,[1] concerning fault allocation by a court of appeal once it has decided that the allocation by the district court was clearly wrong. In the allied case, we resolved the issue that prompted the writ grants in these two cases and held that it is the court of appeal's duty to give some deference to the trier of fact and reallocate fault only to the extent of lowering or raising it to the highest or lowest point reasonably within the district court's discretion. In this case, however, because we find that the district court's outset fault allocation was not clearly wrong, there is no need to reallocate fault. For this reason, we reverse the judgment below and reinstate the district court's judgment which allocates 80% of the fault to the driver, Mr. Rudolph, and 20% to the Morehouse Parish Police Jury.
This case involves the claims of Jerry Wayne Hill, whose fifteen year old son, Michael, was killed in a single car accident. On February 20, 1987, Brad Rudolph, sixteen years old, drove Michael Hill and two other teenagers, Ricky Bostick and Leslie Ainsworth, to the "hangout" from a party in town. Rudolph testified that he consumed at least two seven-ounce beers at the party. Two hours after the accident, Rudolph's blood alcohol content measured .05%.[2]
The hangout, a favorite spot for the local teens, was located on the banks of the Ouachita River. The only access to the hangout was by Parish Road 1132. Point Pleasant Road generally runs alongside Bayou Bartholomew and meets Parish Road 1132 in a "T" intersection, which was marked, at the time, only by a stop sign. No double arrow sign, fence, or other distinguishing feature signaled to motorists the need to turn right or left upon returning from the hangout and approaching the "T" intersection.
*614 After arriving at the hangout, the group left in a hurry because one of the passengers had an 11:00 p.m. curfew. All of the occupants were well acquainted with the area and the road on which they were traveling because that road was the only route to and from the hangout. Rudolph, however, drove at a high rate of speed,[3] despite the thirty-five mile per hour speed limit.
Upon reaching the "T" intersection, Rudolph apparently did not see the stop sign, for he drove through the intersection, over a ditch, down an embankment and into Bayou Bartholomew (a distance of 152.5 feet). The district court noted that the Rudolph vehicle left no skid marks on the paved portion of the road, either because of the wet road or the failure of Rudolph to brake the vehicle timely. Although the car sank quickly, Rudolph and the front seat passenger escaped. Hill and the other back seat passenger, a thirteen year old girl, drowned.
Consequently, Jerry Wayne Hill filed suit in the Fourth Judicial District Court against the insurer of the Rudolph vehicle, the Morehouse Parish Police Jury ("Police Jury"), the Department of Transportation and Development (the "DOTD"), and/or the State of Louisiana, and/or Insbrok, Inc. a/k/a The Great Global Assurance Company, the liability insurer of the Police Jury. Hill dismissed his claims against the State, the DOTD, Insbrok and/or Great Global. Subsequently, plaintiff settled with the vehicle's insurer, leaving only the Police Jury and its insurer, Titan Indemnity Company, as defendants. Plaintiff previously amended his petition for damages to add Titan Indemnity as a defendant. Plaintiff alleges that the "T" intersection was a dangerous intersection and that the Police Jury had failed to erect or maintain adequate warning signs. Defendants, on the other hand, did not raise any issue concerning the possible contributory negligence of plaintiff's minor son.
After a bench trial, the district court concluded that the main cause of this accident was Rudolph's gross negligence, awarded plaintiff $150,000 in general damages, and $7,937.64 in special damages. The district court assessed 80% of fault on the driver and 20% on the Police Jury, the responsibility of which fell to the latter's liability insurer. The court explained: "It has not been shown by the evidence that anything short of an impenetrable forest or barricade would have prevented Rudolph from driving into Bayou Bartholomew. If there is any negligence at all upon the parish governing body, and therefore its insurer, for inadequate markings of this intersection ... that negligence or defect was quite minimal when compared to the gross negligence of Rudolph."
Thereafter, the Police Jury appealed and the plaintiff answered the appeal seeking increases in the allocation of fault and damages. The Second Circuit Court of Appeal found that the trial court's factual determinations were supported by the record. The driver had consumed alcohol and was speeding, but the court of appeal noted that the Police Jury knew that the road was used by teens returning from the hangout, and the cost of replacing the double arrow marker was small when compared to the need. A double arrow sign would provide the earliest possible warning and would have been directly in front of the Rudolph vehicle and visible in his headlights as he approached the "T" intersection. The stop sign, however, was on the right shoulder of the road, thus not directly in the path of oncoming vehicles, nor visible at a distance from the intersection. The court of appeal held that "the police jury's failure to provide this early warning was a substantial factor" in causing the harm. And, accordingly, the court concluded that "the lowest allocation of fault that could reasonably be imposed was 65% to the driver and 35% to the defendants," and not the 80% and 20% found by the district court.
After plaintiff's rehearing complaint regarding the district court's damage award was denied, defendants sought and secured a writ grant which brings the case to us for this review.
In Louisiana, "the appellate court should not disturb ... a finding of fact unless it is clearly wrong." Arceneaux v. Domingue, *615 365 So.2d 1330, 1333 (La.1978). Furthermore, "the reviewing court must give great weight to factual conclusions of the trier of fact; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). "Proper review requires that the appeal court determine from the record that the trial court finding is not clearly wrong or manifestly erroneous." Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 972 (La.1985).
Here, the appellate court erred in determining that the district court was manifestly erroneous. The record and evaluations made by the district court support its findings. The main cause of this accident was the gross negligence of the driver. He was driving at an excessive rate of speed, had been drinking alcoholic beverages, and failed to stop at the stop sign. Furthermore, we are inclined to agree with the district court which held that "[i]f there is any negligence at all upon the parish governing body ... for inadequate markings of this intersection ... that negligence or defect was quite minimal when compared to the gross negligence of Brad Rudolph."
Both experts agreed that "double arrow" signs are not mandatory under traffic control manuals for local roads, except when there has been a history of accidents. Even though plaintiff's counsel tried to establish such a history, the district court found that the evidence, "in its best light," showed the possibility that one or two vehicles had gone into the roadside ditch. However, "[t]here was no evidence of anyone previously proceeding through the intersection, down the embankment, and into Bayou Bartholomew." Thus, we feel that the district court's apportionment of fault was not clearly wrong. Therefore, we reverse and reinstate the district court's judgment.
REVERSED.
NOTES
[*] Judge Burrell J. Carter, Court of Appeal, First Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit. Carter, J., recused, not on panel. Rule IV, Part 2, § 3.
[1] See Clement v. Frey, 95-C-1119, 666 So.2d 607 (La. 1/16/96), also handed down this day.
[2] The district court stated that the "depositional testimony of Dr. Clyde Elliot convinced this court that Rudolph was operating his vehicle while under the influence of alcohol ... Dr. Elliot explained how Rudolph's blood alcohol content at the time of the accident would probably have been .1 or the legally accepted point of intoxication."
[3] Rudolph admitted to a speed of 65 m.p.h. in his statement to the investigating state trooper on the night of the accident.