_JjLOVE, J.
On November 6, 2000, this Court denied a writ application filed by counselor for the minor children, S.R. and D.R.. On December 6, 2000, the Louisiana Supreme Court remanded the matter to this Court.
After briefing, oral arguments and review of the record, we vacate our previous order, thereby granting the writ, reversing the trial court and remanding the matter to the trial court.

FACTS AND PROCEDURAL HISTORY

S.R. and D.R.[1] were placed in the custody of the State of Louisiana Department of Social Services, Office of Community Services (DSS/OCS) by oral instanter order on May 16, 1995. The children were placed in foster care on validated allegations of inadequate shelter, tying and confinement. The boys had serious behavior problems, including fire setting. The fa *505 thers of the children were not involved with their care and had abandoned them. On July 27, 1995, it was stipulated that the boys were “children in need of care.” A plan for reunification with their mother was approved.
During the next five years, review hearings were held at least every six months to monitor the mother’s progress toward the reunification goal. Periodic | ^psychiatric and psychological evaluations of the mother and the boys were conducted throughout the five year period. On May 5, 2000, the Orleans Parish Juvenile Court ordered OCS to assess the possibility of increased visitation between the minors and their mother, P.R.
On July 31, 2000, the court conducted a permanency planning hearing[2]; S.R. was 16 and D.R. was 15. At the hearing, the DSS/OCS case worker testified that the children could be returned to P.R. as soon as P.R.’s home is cleaned and repaired. In addition, DSS/OCS presented a favorable written report from the mother’s psychiatrist, Dr. Guillame, as to her current mental status and recommended the continuation of unsupervised visits with the gradual return of custody to the mother. The written report, consisting of only four sentences, merely stated that P.R. was diagnosed with depression, that she is not taking any medication, and that she has been going to her scheduled doctor’s appointments.
Based on this scant information, counselor for the minor children requested that he be given the opportunity to either take the deposition of Dr. Guillame or to have the doctor subpoenaed to appear in court. The trial court honored the request and the matter was reset for August 28, 2000. On August 25, three days prior to the scheduled hearing, DSS/OCS changed the permanent plan from long term foster care to reunification with the mother.
Dr. Guillame, P.R.’s treating psychiatrist, failed to honor the subpoena and did not appear in court on August 28, 2000. The court conducted a phone conference with the doctor, and Dr. Guillame informed the court that he was not | sable to provide an opinion regarding the mother’s ability to care for the children because his practice did not include family therapy. Further, Dr. Guillame stated that he was unwilling to evaluate or to undertake therapy with the children, S.R. and D.R. Based upon the doctor’s statements, all parties agreed that his testimony would be useless. Counselor for the children renewed his request for updated psychiatric and psychological evaluations. The Judge denied the request and approved OCS’s recommendation to return physical and legal custody to P.R. within two weeks, with continued DSS/OCS supervision and assistance for three months after the return of the children.
The children’s attorney applied for supervisory writ, and this Court denied the writ. The children’s attorney then applied to the Louisiana Supreme Court for a supervisory writ, and the Supreme Court remanded the case for consideration of the writ application by this Court and ordered that the children remain in foster care, pending this Court’s ruling.

DISCUSSION

Under the applicable standard of review, to reverse the trial court, an appellate court must find from the record that the trial court’s finding is clearly wrong or *506 manifestly erroneous. See Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), 666 So.2d 612, 614-15.
Article 702 (D) of the Louisiana Children’s Code states that a court shall determine the permanent plan for a child that is most appropriate and in the best interest of the child. The child’s health and safety shall be the paramount concern in the court’s determination of the permanent plan. See La. Ch. Code Ann. art. |4702(E). The first priority in permanently placing a child is the return of the child to the legal custody of the parents within a specified time period consistent with the child’s age and need for a safe and permanent home. See.La. Ch. Code Ann. art. 702(D). For reunification to remain as the permanent plan for the child, the parent must comply with the ease plan and make significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care. See id. When reunification is the permanent plan for the child, the court shall advise the parent that it is the parent’s obligation to achieve the case plan goals and to correct the conditions that require the child to be in care. See id.
In State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993), the Louisiana Supreme Court established a test to determine if a parent has shown reformation sufficient to preserve family reunification. A reasonable expectation of reformation exists when a parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated. See id. at 1317. Although State in the Interest of L.L.Z. was a case about termination of parental rights, the Supreme Court has applied the case to determine if a permanency placement plan of reunification is consistent with the best interest and special needs of a child. See State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, 450.
Reformation means more than mere cooperation with agency authorities. See id. Reformation of a parent is shown by a “ ‘significant, substantial indication of reformation ... such as altering or modifying in a significant way the behavior which served as a basis for the state’s removal of a child from the home.” ’ Id. (quoting State in the Interest of E.G., 95-0018 (La.App. 1 Cir. 6/23/95), 657 So.2d 1094, 1097); see also State ex rel S.M., 99-0526 (La.App. 4 Cir. 4/28/99), 733 So.2d 159, 167.
Counselor for the minor children argues that the State failed to prove its case beyond a preponderance of the evidence because the State did not produce updated psychiatric and psychological examinations to show that P.R. is able to care for her children. Counselor for the children further argues that the trial court’s judgment to return the children to P.R.’s home is not in accordance with the law and evidence presented. To counter these arguments, the State argues that the conditions that caused S.R. and D.R. to be placed in foster care have been alleviated because of the boys’ ages and because of P.R.’s compliance with her case plan. P.R.’s case plan required that she continue in psychotherapy, continue regular visits with her children, and maintain a clean house. The State’s recommendation of reunification was based on P.R.’s compliance with her case plan, but the State seems to have ignored P.R.’s abusive behavior, which was its primary basis for removing the children from the home.
During the July 31, 2000 permanency planning hearing, the case worker testified extensively about P.R.’s efforts to maintain and clean her house. The State also presented a recent written report from Dr. Guillame, P.R.’s treating psychiatrist, stating that P.R. has been diagnosed with *507 depression, that she is not taking any medications, and that she has been going to her scheduled doctor’s appointments. All of this evidence proves that P.R. has complied with her case plan, but the State has failed to produce any evidence regarding P.R.’s current ability to discipline her children. In fact, Dr. Guillame stated that he was unable to opine as to P.R.’s ability to care for her children, and he was unwilling to provide family therapy to P.R. and her sons.
| fiThe most recent psychiatric and psychological evaluations presented to the court were performed in April of 1999 by Dr. William Janzen. Those reports stated that S.R. had little interest in living with his mother and that it was difficult to determine if D.R.’s psychiatric symptoms would reappear if he is not in a structured environment. Dr. Janzen’s report further states that at one time, P.R. wanted to kill her children and that she has little insight into how discipline with chains and pins are ineffective and harmful. Dr. Janzen concluded that P.R. was psychotic and was not capable of parenting her children due to her bizarre behavior.
In the absence of updated psychiatric and psychological reports, the court cannot fully measure P.R.’s progress. Although the State presented evidence of P.R.’s compliance with her case plan, reformation requires more than mere cooperation with the State. Reformation requires significant modification in the abusive behavior that caused S.R. and D.R. to be removed from the home. The only evidence that the State presented regarding P.R.’s abusive behavior was the case worker’s testimony that she talked to P.R. about the proper way to discipline children. Considering the abuse inflicted upon the children and P.R.’s statements that she wanted to kill her children, this is not sufficient evidence of significant modification in P.R.’s behavior.
When considering the right to rear one’s children, evidence must be relevant and timely. See State in the Interest of A.E., 98-0932 (La.App. 1 Cir. 9/25/98), 718 So.2d 1078, 1080. The State admits that the most recent psychiatric and psychological evaluations are outdated and speculative. To insure that S.R. and D.R. will be returned to a safe environment speculative reports as to P.R.’s ability to discipline the children is not enough; it is in the children’s best interest to obtain 17updated psychiatric and psychological evaluations before returning them to P.R. The trial court’s denial of the request for updated psychiatric and psychological evaluations is clearly wrong.
For the foregoing reasons, we vacate our previous order, thereby granting the writ, reverse the trial court and remand to the trial court to obtain updated psychiatric and psychological evaluations of the family, after which a dispositional review hearing should be held and a new permanent placement plan rendered for S.R. and D.R.

WRIT GRANTED; REVERSED AND REMANDED.

. The initials of the parties will be used to protect and maintain the privacy of the minor children involved.

. Under article 603 (14.1) of the Louisiana Children's Code, a permanency hearing is a hearing conducted to determine the permanent plan for a child. Permanent placement includes return of legal custody to the parent, placement of the child with adoptive parents, or placement of the child with a legal guardian. See LA. Ch. CODE ANN. Art. 603(15).