hKOSTELKA, J.
Mr. and Mrs. B appeal the trial court judgment which permanently transferred the legal custody of the couples’ biological child, J.B., and Mrs. B’s son by a previous marriage, W.K., to the children’s maternal aunt and uncle and ordered the Department of Social Services (“Department”) to institute termination of parental rights proceedings within ninety days. We amend the judgment, and, as amended, affirm.
Facts
Based upon a validated report of the sexual abuse of W.K. by Mr. B and lack of supervision of the children by the couple, W.K. and J.B. were placed into state custody on July 25, 2000 and were subsequently adjudicated children in need of care on December 21, 2000. A subsequent dispositional hearing on January 16, 2001 continued the children in state custody, reduced Mr. B’s child support obligation and established his visitation schedule with the children. Thereafter, an appeal of these earlier adjudications ensued. For a complete synopsis of the events leading up to the earlier proceedings, see our previous opinion in State in the Interest of J.B. and W.K., 35,032 (La.App.2d Cir.05/09/01), 794 So.2d 899, which amended the judgment to increase Mr. B’s visitation rights with J.B.
Filed in the record on July 23, 2001 is a letter from the Department dated July 12, 2001 addressed to the trial judge recommending as a permanent plan for the children the transfer of guardianship to the children’s maternal aunt and uncle, B.B. and A.B.[1] A copy of the case plan was also ^attached to the letter and filed into the record. The correspondence mentioned that a review/permanency plan hearing was scheduled for July 23, 2001 and was sent by certified mail to both Mr. and Mrs. B and their attorneys of record. Thereafter, Mr. and Mrs. B were granted two continuances which delayed the hearing until September 24, 2001.
On September 13, 2001, shortly prior to the hearing date, the Department filed into the record a case update letter addressed to the trial judge. In addition to reiterating its prior recommendations, the Department reported a new allegation of the fondling of J.B. by Mr. B prior to the placement of the children in the Department’s custody. The correspondence reported statements from two female relatives who claimed that Mr. B had also fondled them when they were children. After hearing the testimony and reviewing the evidence, the trial court decreed that the best interests of the children were served by a permanent transfer of the children’s legal custody to B.B. and A.B. The court also ordered the Department to institute a Petition for Termination of Parental Rights within ninety days for failure to comply with the court-ordered case plan. From this judgment, Mr. and Mrs. B appeal.
Discussion

Propriety of Permanency Hearing

On appeal, Mr. and Mrs. B urge that the trial court prematurely conducted *183 the September 24, 2001 permanency hearing because there existed no earlier judicial determination that reunification efforts were not required in accordance with La. Ch.C. art. 672.1. We cannot agree.
|3The provisions of La. Ch.C. art. 702(B) provide that the court shall conduct a permanency hearing in no case more than twelve months after the child is removed from the home. Because in this case it is undisputed that J.B. and W.K. were placed in the Department’s custody on July 25, 2000, a permanency hearing was required to be conducted by July 25, 2001. Of course, due to continuances granted in favor of the parents, that hearing did not occur until September 24, 2001.
We are also unpersuaded by Mr. and Mrs. B’s interpretation of La. Ch.C. art. 672.1. The language of La. Ch.C. art. 672.1(A) provides that the department may file a motion for judicial determination that efforts to reunify the parent and child are not required. Such language is clearly permissive rather than mandatory. La. Ch.C. art. 672.1(C)(1) also provides that efforts to reunify the parent and child are not required where a court determines that “[T]he parent has subjected the child to egregious conduct or conditions, ...” Moreover, the 1999 Comments to Article 672.1 explain that the enactment of this article recognized that in certain circumstances, reunification would be a futile exercise that would further damage the child.[2] In those cases, the Department may seek to be relieved of its duty to make “reasonable efforts” to reunify the family and immediately or within thirty days of the judicial determination that reunification was not required conduct a permanency hearing. Both the language of the article and the above-noted explanation show that a judicial determination that | ¿reunification efforts are not required is not a prerequisite for every case. Indeed, the judicial determination that reunification is not required would not only apparently eliminate reunification as a permanent plan but would also shorten the time within which a termination of parental rights proceedings must be filed. See La. Ch.C. art. 702, 1999 Comments (b) and (c). Accordingly, if taken to its logical result, the parents’ argument would ultimately be detrimental to their position. In these circumstances, we conclude that the September 24, 2001 hearing was timely and appropriately classified as a permanency hearing.

Trial Judge Prejudice

Both Mr. and Mrs. B raise issues regarding the alleged prejudicial conduct of the trial judge. In the interest of judicial economy, we will consider the parties’ analogous arguments together. Mr. B contends that certain statements by the trial judge demonstrated his preconceived opinions against Mr. and Mrs. B and the outcome of the case that effectively “denied [them] the reasonable opportunity to present their testimony prior to a judicial determination.” Similarly, Mrs. B urges that without hearing all of the evidence, the trial judge concluded that she failed to comply with her case plan and did not allow her to make specific objections to it.
Notably, the record reveals no objection by either Mr. or Mrs. B to the complained-of trial court’s statements or actions. Of course, the failure to object to an error in a trial court at the time it is made, including statements of the trial court, constitutes a waiver of the right to complain of the error on appeal. Oh v. *184 Allstate Ins. Co., 428 So.2d 1078 (La.App. 1st Cir.1983). Nevertheless, a review of the record as a whole fails to disclose that the trial court’s actions were so prejudicial that the parties were deprived of a fair trial.
Generally, a trial judge is presumed to be impartial; thus, a party contending that a judge did not act impartially is required to present some factual basis to support his claim and may not rely on conclusory allegations. Jackson v. CSX Transportation, Inc., 97-0109 (La.App. 4th Cir.12/23/97), 712 So.2d 514, writs denied, 98-0417, 98-0418 (La.04/03/98), 717 So.2d 1130, cert. denied, 525 U.S. 870, 119 S.Ct. 166, 142 L.Ed.2d 136 (1998) and cases cited therein. Still, the trial court is generally prohibited from engaging in a pattern of judicial conduct that demonstrates prejudice to one party or partiality to the other party. Reed v. Recard, 97-2250 (La.App. 1st Cir.11/18/99), 744 So.2d 13, writ denied, 98-3070 (La.02/12/99), 738 So.2d 572. Improper conduct by the trial court constitutes reversible error, but only when a review of the record as a whole reveals the conduct was so prejudicial that the complaining party was deprived of a fair trial. Id.
In support of his claim, Mr. B points to three statements made by the trial judge during the proceedings. These statements are as follows:
I have had just about enough of Mr. And Mrs. [B] to last me a lifetime_[3]
Well, I’ll tell you what. Let’s just put these children back together, let Mr. And Mrs. [B] move back into the house ... and let these two children move back in with them and let Mr. [B] continue his sexual abuse and let Ms. [B] continue to allow it to happen.
|f,And there is a case plan and I think the law is pretty clear that if you fail to comply with the case plan that I can direct that involuntary termination of parental rights petition be filed. And I’m going to tell you right now, that’s what I’m fixing to do in this case if these two people have not complied with the case plan.
In context, the remarks were made by the court out of frustration over Mrs. B’s counsel’s continued complaints regarding Mrs. B’s visitation schedules — restraints that the court felt were self-imposed by Mrs. B due to her previous recommendation that the children move in with their aunt and uncle, B.B. and A.B., in Little Rock, Arkansas. While we agree that these statements are untoward, we cannot find them to be so prejudicial so as to warrant reversal of the judgment.
The trial court had previously presided over the earlier adjudication and disposition hearings and was obviously familiar with the parties and the protracted facts of the case. It was this knowledge which clearly precipitated the court’s statement regarding his “having enough” of Mr. and Mrs. B. Specifically, the court’s grievance was rooted in its awareness of Mrs. B’s inconsistent conduct throughout the proceedings. After reviewing the conversation in its totality, we cannot say that the court’s statement is ultimately anything more than an expression of its frustration over Mrs. B’s documented behavior. While unseemly, we cannot conclude that such an observation of the facts is prejudicial.
The same is true of the court’s statement regarding the reunification of the family. In the earlier proceedings, the court had heard evidence regarding sexual abuse and ultimately made a judicial deter *185 mination thatl7Mr. B. had sexually abused W.K. and that Mrs. B had failed to protect her children from the abuse. Unfortunately, the statement by the court revealed the harsh reality of what had earlier occurred in the home and ultimately resulted in the children’s removal. While unrestrained and unnecessary, we cannot conclude that the comments made by the court prejudiced the parties’ ability to prove reformation of their behavior or that they had demonstrated substantial compliance with the case plan. Accordingly, we reject this claim.
The final statement by the court merely instructs the parties of the trial court’s actions in the event they were shown not to have complied with the case plan. Wé can discern no prejudice within such a statement.
When viewed in its entirety, the record before us shows that in accordance with La. Ch.C. art. 702, the trial court’s paramount considerations were the best interests of the children and whether the Department had made reasonable efforts to reunify the family. Moreover, the record otherwise independently and amply demonstrates that Mr. and Mrs. B failed to make significant measurable progress toward correcting the conditions which required the children to be removed from the home in accordance with the case plan. In these circumstances, we cannot conclude that Mr. and Mrs. B have sufficiently demonstrated that the trial judge displayed any particular prejudice so as to deprive them of a fair trial. We, therefore, reject this argument.
Mrs. B also claims that the trial judge’s pre-judgment regarding her compliance with the case plan is shown in the following statements. U“[W]e’re here today because they have failed to comply with the requirements of the plan.... ” She urges that this statement shows that at this stage of the proceedings (her attorney’s cross-examination of the first witness called by the Department), the trial judge had concluded that she had failed to com: ply with the case plan before hearing all of the evidence and “did not consider that Mrs. B[was] allowed to object to it-” Specifically, Mrs. B claims that she was not allowed to object to the fact that reunification was no longer the goal of the Department or that the housing arrangements of the maternal aunt and uncle were inadequate. She also claims her desire for more frequent visitation and help in securing transportation were not addressed.[4]
When compared with later statements made by the trial court, we must conclude that the language pointed out by Mrs. B was an inadvertent statement by the court. Later in the very same colloquy between the court and counsel, the trial judge repeatedly rehabilitated his earlier statement by explaining:
And there is a case plan and I think the law is pretty clear that if you fail to comply with the case plan that I direct that involuntary termination of parental rights petition be filed. And I’m going to tell you right now, that’s what I’m fixing to do in this case if these two people have not complied with the case plan. And so whether or not there is visitation in Arkansas or not is of no consequence, because if they have failed to comply with the case plan, that, to me, is — is an affront to their claim that *186 they’re interested in the welfare of their children in reunification. (Emphasis ours.)
1 gAccordingly, we reject this portion of Mrs. B’s argument.
The conclusion that the trial court did not allow Mrs. B to object to the case plan is likewise unfounded. Indeed, Mrs. B filed a written objection to the case plan on September 17, 2001. In that motion, Mrs. B specifically noted objections to the visitation schedule and the adequacy of housing. Moreover, during the hearing, the trial court allowed counsel to conduct extensive questioning of the caseworker and Mrs. B regarding Mrs. B’s visitation, as well as the availability of transportation to Arkansas for Mrs. B.
In addition to the formal objection to the adequacy of the children’s housing, W.K. testified regarding his living and sleeping arrangements at the home of his aunt and uncle. In argument, Mrs. B’s counsel requested that the court order that the Arkansas family seek larger accommodations due to the home study report which discussed “cramped quarters” and W.K.’s testimony regarding his sleeping arrangements. In accordance with these requests and testimony, the trial court ordered, in its final judgment, that the Department assist B.B. and A.B. in securing a larger living space.
Plainly, the record before us shows that the specifics of Mrs. B’s objections were addressed in the record and were, therefore, before the court. Accordingly, we discern no prejudice arising from these circumstances.

Mr. B’s Remaining Arguments

Mr. B contends that the trial court erred in failing to sustain a motion for the release of J.B. to Mr. B when the Department failed to commence an | ^adjudication hearing within forty-five days of the filing of the petition in accordance with La. Ch.C. art. 659(C). Notably, Mr. B raised, and this court disposed of, this argument in the previous appeal. Accordingly, this issue has been finally and definitively resolved and is not appropriately before this court for review. Buckbee v. Aweco, Inc., 626 So.2d 1190 (La.App. 3d Cir.1993), writ denied, 93-2691 (La.01/13/94), 631 So.2d 1162.
Mr. B next contends that the placement of J.B. in the custody of B.B. and A.B. is not the least restrictive disposition and effectively deprives either parent of reasonable and meaningful contact with J.B. Citing La. Ch.C. arts. 681 and 683, Mr. B maintains that the trial court could have returned the custody of J.B. to him with a protective order.
Indeed, La. Ch.C. arts. 681 and 683, contained in Chapter 14 of the Child in Need of Care provisions of the Louisiana Children’s Code, require the court to impose the least restrictive disposition in its initial placement of the child and allows as a dispositional alternative the placement of the child in the custody of the parent with the option of a protective order. However, we have previously concluded that the present proceedings qualified as a permanency hearing which is governed by Chapter 16 of the Children’s Code. At this procedural posture of the case, therefore, the dispositional alternatives provided in Chapter 14 are inapplicable. Any complaints regarding these dispositional options should have been raised in the previous proceedings and appeal.[5] Accordingly, Mr. B’s argument is ^specious, at best. *187 Moreover, neither in his formal written objection to the plan nor at the permanency hearing did Mr. B object to the case plan on these grounds. Accordingly, he is precluded from raising this objection for the first time on appeal. Oh, supra.
Mr. B alternatively urges that the trial court erred in failing to return custody of J.B. to Mrs. B because the evidence demonstrates her substantial compliance with the case,plan.[6]
To reverse a trial court’s permanency plan determination, an appellate court must find from the record that the trial court’s finding is clearly wrong or manifestly erroneous. State in the Interest of S.R. and D.R., 2000-1927 (La.App. 4th Cir.04/11/01), 788 So.2d 503. As stated above, La. Ch.C. art. 702 provides that a court shall determine a permanent plan for a child that is the most appropriate and in the best interest of the child. The child’s health and safety shall be the paramount concern in the court’s determination of the permanent plan. La. Ch. C. art. 702(E). Although the first priority in permanently placing a child is the return of the child to the legal custody of the parents within a specified time, for reunification to remain the permanent plan for the child, the parent must comply with the case plan and make significant measurable progress toward achieving its goals and correcting the conditions which necessitated the child to be in care. La. Ch.C. art. 702(C)(1). This compliance has been referred to as reformation. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993). The test established to determine if a parent has shown reformation Insufficient to preserve family reunification is a “reasonable expectation of reformation.” Id. A reasonable expectation of reformation exists when a parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated. State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445. Reformation means more than cooperation with agency authorities and is shown by a significant, substantial indication of reformation such as altering or modifying in a significant way the behavior which served as a basis for the Department’s removal of the child from the home. Id.
Annette Jefferson (“Jefferson”), case foster care worker, testified that in her opinion reunification was not in the best interests of the children. Jefferson stated that Mrs. B faded to cease contact with Mr. B in accordance with the case plan. She revealed that the two had been seen together on September 4, 2001 and February 28, 2001. Additionally, Mr. B’s truck had been seen parked at Mrs. B’s residence on March 24, 2001 and May 14, 2001. Jefferson also noted that Mrs. B had failed to report to the Minden, Louisiana YWCA for the purpose of gaining knowledge regarding domestic violence, sexual education and protection of the children in accordance, with the case plan. Jefferson testified that to no avail she and YWCA employees had attempted to work around Mrs. B’s Schedule. Jefferson explained that Mrs. B’s attendance in these programs would have covered “a lot of the issues that was (sic) in this case plan with the sexual abuse, the dealing of (sic) it, what happened with their children.” She also noted that due to Mrs. B’s unemployment, she had not paid child support in accordance with | ;sthe plan but that Mrs. B had recently obtained employment. Fur *188 ther, Jefferson testified that although Mrs. B had been allotted eight visits with a family counselor to help with her codependency issues, she had only attended two. Jefferson stated that despite Mrs. B’s awareness that visitation with the children was available to her, she did not take advantage of that fact and had even forgotten one scheduled local visit.
Mikal Frazier (“Frazier”), an expert in family counseling, recommended that the children be placed in the home of their maternal aunt and uncle, B.B. and A.B. After two counseling sessions, Frazier concluded that Mrs. B would have difficulty in being a benevolent mother. Frazier also expressed concern over Mrs. B’s ability to economically provide for J.B. and the lack of a social support system caused by Mrs. B’s isolation. Frazier felt that a support system was important due to Mrs. B’s past drug use. Frazier was also troubled by Mrs. B’s continued relationship with Mr. B and questioned why a mother who claimed to want to protect her children remained in a relationship with a man who was responsible for her losing them.
This evidence supports the trial court’s permanency plan judgment. Mrs. B clearly lacked compliance with foundational case plan conditions fashioned to correct the behavior which caused her children’s removal from the home, e.g., ceasing contact with Mr. B and sexual abuse counseling. These requirements were prerequisites to meeting the core goal of protection of the children. Mrs. B’s negligence in conforming to these fundamental requirements of the plan more than adequately supports the lutrial court’s determination that she failed to show reformation sufficient to preserve family reunification. We, therefore, reject this portion of Mr. B’s argument and find no error in the trial court’s rejection of reunification as a permanent plan for J.B. and Mrs. B.

Termination Hearing

In his final argument, Mr. B complains that the trial court had no authority to order the Department to file a Petition for Termination of Parental Rights within ninety days. We disagree.
La. Ch.C. art. 1004(A) provides:
A. At any time, including in any hearing in a child in need of care proceeding, the court on its own motion may order the filing of a petition on any ground authorized by Article 1015.
The 1997 Comments explain that this article was “substantially revised” to emphasize the court’s “primary authority and responsibility” to oversee the initiation of termination of parental rights proceedings.
La. Ch.C. art. 1015 provides the grounds for termination of parental rights. One of those grounds, contained in Article 1015(5), is that at least one year has elapsed and there has been no substantial compliance with a case plan approved by the court as necessary for the safe return of the child and that despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future. As reflected by his oral reasons for judgment and the written judgment, it is on these grounds that the trial court ordered the petition for termination of parental rights to be filed.
| ibAdditionally, La. Ch.C. art. 710(B), which requires the judgment finalizing a permanency plan to be in writing, also allows the court to order “the filing of a certification for adoption petition.”[7]
*189 Within this statutory authority, the trial courts’s actions were appropriate. We, therefore, reject Mr. B’s argument.

Amendment of Trial Court Judgment

The record reflects that the trial court accepted the permanency plan submitted by the state but amended it to provide for the transfer of legal custody to B.B. and A.B. rather than the transfer of guardianship to them as recommended by the state. Of course, La. Ch.C. art. 702(C)(3) and (4) list these two options as separate priorities of placement. In the very recent supreme court pronouncement in State In the Interest of L.C.B., 2001-2441 (La.01/15/02), 805 So.2d 159, the court explained that under the scheme imposed by the various provisions of the children in need of care provisions of the Louisiana Children’s Code:
[T]he court may review the case plan and either approve the plan or reject it and order the Department to revise the plan accordingly. It cannot, however, revise the plan itself or order any particular placements of children adjudicated in need of care and placed in the Department’s custody.
After concluding that the lower court in L.C.B. rejected and unilaterally revised the Department’s plan, the supreme court reversed the judgment and remanded the matter for further proceedings.
|1fiOf course, in the present matter, the trial court’s unilateral change in the Department’s permanency placement from guardianship to legal custody is in the strictest sense a unilateral revision of the plan. Nevertheless, with the court otherwise accepting the plan and the placement of the children with B.B. and A.B., such a revision is a technical rather than substantive one. In these circumstances, we find it unnecessary to remand the case for further proceedings. We, instead, amend the judgment to delete that paragraph which amends the Department’s plan to provide for a transfer of legal custody to B.B. and A.B. and otherwise reinstate that portion of the Department plan which provides for a transfer of guardianship to B.B. and A.B. In all other respects, the judgment is affirmed. Costs are assessed equally to Mr. and Mrs. B.
JUDGMENT AMENDED, AND, AS AMENDED, AFFIRMED.
WILLIAMS, J., concurs.

. As of the date of this letter, W.K. was staying with B.B. and A.B. in their Little Rock, Arkansas home. Although J.B. was then residing with her paternal aunt and uncle, she desired to live with W.K. in the home of B.B. and A.B. After a favorable home study report was received by the Department, both children were placed with B.B. and A.B. on August 17, 2001.

. In such cases, the Department is required to prove by clear and convincing evidence that due to the health, safety and need for permanency of the children, reunification efforts are no longer required. La. Ch.C. art. 672.1(B).

. Mrs. B also complains that this statement shows prejudice.

. In brief, Mrs. B complains that the Department had no specific plan for her visitation with J.B. despite the fact that expert testimony recommended the child have contact with her mother monthly or every other week. Because both the case plans dated 1/11/01 and 7/19/01 clearly provide Mrs. B with at least one supervised visit per month, we fail to find merit to this argument.

. Notably, at the permanency hearing, both counsel for Mr. and Mrs. B conceded that ''[Pjlacement with the aunt and uncle up in Little Rock, Arkansas is the proper placement right now....”

. Interestingly, Mrs. B does not raise this argument on her own behalf, and neither party objects to the placement of W.K.

. In 1997, Title X, originally entitled "Involuntary Termination of Parental Rights,” was renamed "Judicial Certification of Children for Adoption.” This Title contains La. Ch.C. art. 1015.