STEWART, J.
liThe mother, Deanna Rae Howell Patton, appeals a judgment granting the guardianship of her three children to relatives. For the following reasons, we affirm the judgment.
FACTS
For reasons of dependency and inadequate shelter, the minor children, P.A.P., L.N.P., and P.C.P., were taken into the custody of the Department of Social Services — Office of Community Services (hereafter “the department”) on September 25, 2007. The children had been living in motels with their mother prior to their removal. Their father was incarcerated.
The department was able to place all three children with relatives in Haughton. P.A.P. was placed with the paternal grandparents; L.N.P. was placed with the paternal uncle and his wife; and P.C.P. was placed with the paternal aunt and her husband.
Pursuant to stipulations of the parties, the trial court adjudicated the children to be in need of care at a hearing on January 28, 2008. At a subsequent dispositional hearing on February 11, 2008, the trial court ordered the children to remain in the department’s custody and approved a case plan with the goal of reunification. The status quo was maintained at a review hearing conducted on May 5, 2008. A permanency hearing was scheduled for September 2008.
Prior to the permanency hearing, the department submitted a progress report dated September 9, 2008. The father had made no progress on his case plan. The mother had completed a psychological evaluation and a drug assessment. She had submitted to random drug screens and completed a |2drug treatment program. However, she did not follow through with outpatient treatment. She also failed to obtain both adequate housing for herself and the children and legal income to provide for them. The case plan goal remained reunification.
The department submitted an addendum to the report on September 16, 2008, changing th'e goal to guardianship due to the mother’s arrest on September 12, 2008. The mother was jailed at the Caddo Cor *184 rectional Center. Both the Bossier Parish Sheriffs Office and the Haughton Police Department had holds for her upon her release.
The permanency hearing took place on September 29, 2008. Counsel for the mother initially requested a continuance until further information could be obtained regarding the mother’s criminal case. Counsel for the children and the department objected. The mother’s counsel then dropped the request for a continuance and objected to guardianship as premature.
Camie Barganier, a Child Research Specialist II who was the caseworker on this matter, testified that the mother’s arrest was the reason for changing the goal from reunification to guardianship. She also noted that the mother had not attended group meetings as required for her outpatient drug treatment and that she did not have a place to live with the children. According to Ms. Barganier, the mother had requested more time to work her plan, and the department had been willing to grant her request believing that she would start attending the group meetings. Bar-ganier did state that, although the mother had not attended outpatient drug treatment and had provided falsified documents to show she was in a program, her | ndi*ug screens had been negative. Prior to her arrest, the mother had been living with friends and had no job. Ms. Barganier explained that the mother held a job for four months until she was fired. The mother told her that she did not go back to work because she had a toothache. As for housing, Ms. Barganier explained that she helped the mother obtain a list of available homes in Shreveport, but the mother concluded the homes were in “bad areas” where she did not want her children to live. Also, no applications were being taken for Section 8 housing. Ms. Barganier testified that the mother had done a majority of her case plan, but she did not testify that the mother had made substantial progress.
In its reasons for granting guardianship of the children to the relatives with whom they had been living, the trial judge expressed concerns about the department’s September 9, 2008 recommendation for reunification, its overall assessment of the case status, and the mother not being further along in working her case plan. He noted that the mother had told her caseworker that she was not yet ready for the return of her children. As expressed in the judgment, the trial judge concluded that guardianship was in the best interests of the children and that it was the least restrictive disposition consistent with their rights, needs, health, safety and welfare.
DISCUSSION
In seeking reversal of the judgment of guardianship, the mother argues that the department did not, as required by La. Ch. C. art. 672.1, file a motion seeking a judicial determination that reunification efforts were not |,[required, nor did it show by clear and convincing evidence that such efforts were not required.
La. Ch. C. art. 672.1(A) provides that the department “may” at any time in a child in need of care proceeding file a motion for a judicial determination that reunification efforts are not required. The language of this provision is permissive, not mandatory. It does not compel the department to file a motion for a judicial determination that efforts to reunify the family are not required. State ex rel. C.M. v. Willis, 41,908 (La.App. 2d Cir.12/27/06), 946 So.2d 316, unit denied, 2007-0190 (La.2/16/07), 949 So.2d 413; State ex rel. J.B. v. J.B., Jr., 35,846 (La.App. 2d Cir.2/27/02), 811 So.2d 179.
*185 Moreover, the article sets forth the following circumstances under which reunification efforts are not required:
(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.
(2) The parent has committed murder or manslaughter of another child of the parent or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.
(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent.
La. Ch. C. art. 672.1(C).
None of these circumstances has been alleged to exist in this matter. Therefore, the department did not have to seek a judicial determination that efforts to reunify the family were not required prior to proceeding with a permanency hearing. We find no merit to the mother’s argument regarding the department’s failure to comply with Article 672.1.
|sLa. Ch. C. art. 702, which governs permanency hearings, requires the court to determine a permanent plan that is most appropriate and in the best interests of the children. La. Ch. C. art. 702(C). The court is directed to determine whether the department made reasonable efforts to reunify the family or to finalize a placement in an alternative safe and permanent home. La. Ch. C. art. 702(E). The paramount concern of the court in determining a permanent plan is the child’s health and safety. Id. The court is also directed to consider the child’s need for continuing contact with any relative with whom the child has an established and significant relationship as a factor in determining the most appropriate permanent plan that is in the child’s best interest. La. Ch. C. art. 702(D).
For reunification to remain the permanent plan, the parent must be complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions which caused the child to be placed in care. La. Ch. C. art. 702(C)(1).
The trial court’s permanent placement determination is reviewed under the manifest error standard. State ex rel. C.M. v. Willis, supra; State ex rel. J.B. v. J.B., supra.
The mother argues that the judgment awarding guardianship of her children to relatives is contrary to evidence that she was making significant and measurable progress on her case plan. She refers to Ms. Barganier’s testimony that she had completed a majority of her case plan and that the department had been willing to give her additional time to complete the plan.
To find that a parent has made significant and measurable progress on a case plan, the record must show “a reasonable expectation of reformation” by the parent. State ex rel. J.B. v. J.B., Jr., supra. Reformation requires more than mere cooperation with the department. Rather, the parent must have altered or modified in a significant way the behavior that was the basis of the children’s removal. Id.; State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445.
The record shows that the mother has completed a drug assessment and inpatient treatment program, undergone a psychological evaluation, and attended parenting classes. However, she has not followed through with outpatient treatment, she has not obtained suitable housing, and she has not obtained employment that would allow her to provide for her children. These case plan requirements are directly related to the causes of the children’s removal. There is no reasonable explanation in the *186 record for her failure to have completed these items on her case plan. There is also nothing in the record to indicate when or if the mother will begin outpatient treatment, find housing, or hold down a job. Her submission of falsified documents to show that she was attending post-treatment group meetings and her claim that she did not return to work because of a toothache indicate an unwillingness to do what is necessary to obtain the reunification of her family. Even if the mother’s drug screens have been negative, her avoidance of outpatient treatment is troubling and suggests that she has not fully confronted her problem.
|7Although she requested additional time (three months) to complete her case plan, which the department was willing to agree to prior to her arrest, there is no basis in the record for concluding that the mother would take the steps necessary to complete her plan in that time. In fact, the record shows that the family has a history with the department and that they have in the past declined services and failed to cooperate when services were provided.
Like the trial court, we have concerns about the department’s case assessment and reunification goal set forth in the September 9, 2008 report. In light of the report and the attached ease plan, the department’s conclusions seem unduly optimistic rather than realistic. The mother’s arrest highlights the fact that she has not achieved the stability that is necessary for the return of her children. At the time of the permanency hearing, a year had passed since the children were taken into custody and seven months had passed since the dispositional hearing. Considering the time that has elapsed since the children’s removal and the mother’s arrest, her failure to attend outpatient drug treatment, her failure to find steady employment, and her failure to obtain housing, we cannot say that she has made significant and measurable progress in correcting the conditions that required the children to be placed in care.
Prior to their removal, the children lacked a safe and stable home environment due to their mother’s drug use and their father’s incarceration. They were often left alone or with strangers. They lived in motels. The record includes the report that the children hoarded food when first placed | ¡¿with relatives. The children’s lives have changed for the better since being placed with their relatives. They are thriving in loving, safe, and supportive environments with relatives who are willing to provide care for them and with whom they have established significant relationships. The determination of guardianship as the permanent placement for the children reflects that their health and safety was the paramount concern as required by La. Ch. C. art. 702(E). Guardianship as their permanent placement is in the best interests of the children.
We are unpersuaded by the mother’s argument that the permanent placement of the children under the guardianship of relatives absolves the department of further responsibility in achieving reunification of the family. The record clearly shows that the department made reasonable efforts toward reunification during the year since the children were taken into care. Parental rights have not been terminated. The mother and father still have the opportunity on their owm to reform and seek the return of the children.
CONCLUSION
Finding no manifest error in the trial court’s judgment, we affirm. Costs are assessed to the appellant.
AFFIRMED.