JOAN BERNARD ARMSTRONG, Chief Judge.
 

 hFab Idris, plaintiff below, appeals the trial court’s judgment granting the Motion for Directed Verdict pursuant to La.Code Civ. Proc. Art. 1810 filed on behalf of the defendant, Allstate Insurance Company (Allstate). For the reasons that follow, we affirm the judgment of the trial court.
 

 Mr. Idris filed a claim under his Allstate homeowner’s insurance policy for property lost in an alleged burglary on or about March 12, 2005. The list of allegedly stolen items included ninety-three laptop computers, seventy-four camcorders and twenty-seven digital cameras. The stipulated insurance policy provided limits of $2500 for business inventory, and $5000 for electronic data processing equipment, whether or not used in business. The policy also provided that losses or occurrences in which the insured person concealed or misrepresented any material fact or circumstances were not covered.
 

 The trial court orally assigned its reasons for judgment:
 

 The motion for directed verdict is granted. In this Court’s view, Plaintiff abysmally failed to prove his claim by the accepted standard of more likely than not. In fact, he didn’t even prove his claim by could have, |2wouId have, should have. The motion, therefore, is granted.
 

 And because this Court is of the view that the plaintiffs, Fab E. Idris [sic], testimony was riddled with lies in his sworn testimony demonstrating total disrespect for this Court, the Court finds him in contempt and orders him in prison for 24 hours.
 

 Mr. Idris made the following
 
 fro se
 
 assignment of error:
 

 “The trial court erred was the lopsided judgment, the judge totally ignore the Louisiana code of civil procedure: R.S. 22:1220; the trial court did not consider this important law code of the state of Louisiana. The trial court erred was he totally ignore the substantial evidence that show a satisfactory proof of loss in this case. The trial court erred was that he totally ignore: R.S. 22:1220, subsection, B(5); failing to pay after receipts of satisfactory of proof of loss. The trial court erred was offering $5,000 to appellant for the loss of over $65,000; on April-14-2008 in the pre-trial hearing; appellant respectfully declined the offer.” [Sic]
 

 We note initially that the judgment does not address the settlement offer referenced in Mr. Idris’ assignment of error, and he has not cited nor has our independent research discovered any cause of action for an offered and rejected settlement under the circumstances of this case. Furthermore, La. R.S. 22:1220 is a strictly construed penalty statute, applicable only to those cases in which an insurer is found liable under its policy and where the in
 
 *1109
 
 sured has proved that the insurer has breached its duty of good faith and fair dealing. For the reasons that follow, it is clear that Allstate is not liable under the policy and did not breach its duty to Mr. Idris.
 

 In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error.
 
 Hill v. Morehouse Parish Police Jury,
 
 95-100, p. 4 (La.1/16/96), 666 So.2d 612, 614. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844-845 (La.1989).
 

 Our review of the record in its entirety convinces us that the trial court’s conclusions are reasonable and supported by the record taken as a whole.
 

 Mr. Idris testified that on the evening of March 12, 2005, he had been out with friends, and returned to his home at approximately three o’clock in the morning to find the door ajar. Upon entering his home, he observed certain items were missing, and concluded that he had been the victim of a burglary. He called the police, and an officer investigated the alleged crime.
 

 Mr. Idris testified that he filed a claim with Allstate for approximately $65,000, representing the value of the items he claims were stolen, and that Allstate denied his claim. Mr. Idris testified that the items he claims were stolen were not business inventory, but had been purchased either in bulk or individually as parts of a collection, thus taking them out of the inventory limitation set forth in 14the insurance policy. He admitted, when questioned by the trial judge, that the items were basically the same, although some of the digital cameras differed in style, model, design and technology. According to Mr. Idris, the thief or thieves went directly to the walk-in closet in his bedroom and stole only the electronic equipment he contended constituted his collection.
 

 Under cross-examination, Mr. Idris admitted that he had suffered similar thefts of electronic equipment in 1997 and 1998, when he was insured by State Farm. He claimed a loss of five camcorders, five cameras and portable television sets on August 12, 1997. According to the stipulated State Farm records introduced in connection with Mr. Idris’ testimony, a burglar went through Mr. Idris’ iron doors to enter the house. Mr. Idris’ State Farm claim indicates that, as he had in the instant case, he left the house and returned at about three o’clock in the morning to discover the burglary. A year later, he claimed that twenty-seven camcorders, nine cameras and four mini-television sets were stolen. In both State Farm claims, Mr. Idris contended that the stolen property was not held for resale, but was part of a collection he kept as a hobby. Mr. Idris denied that he sold this equipment out of his house, but refused to reply to discovery asking for his financial informa
 
 *1110
 
 tion in order to determine how he was able to support these collections. He testified that he has never been employed, and came to this country in the early 1980s. Subsequently in his testimony, he stated, “I wouldn’t say I never have employment, but I have several things. But say basically employment, I have my own income. So, I don’t know. I’m really entertaining this because it’s not irrelevant to the law, but I’m just entertaining it.” When the trial court pointed out that his sources of income were relevant to the coverage,
 
 vel non,
 
 of the Allstate policy, Mr. Idris testified that he could not recall having been employed |fisince coming to the United States. He started a transshipping company that made no money and was closed down after approximately six months in 1998.
 

 Mr. Idris admitted that in 1993 he was sued for child support following a positive paternity test. In connection with a hearing in that case, he submitted a signed and sworn income and expense sheet indicating that he was earning $800 a month, and had monthly expenses of $763. Mr. Idris admitted that he appealed the child support judgment, finding him liable for arrearag-es of approximately $15,000, to the Court of Appeal and applied for a supervisory writ to the Louisiana Supreme Court, persisting in the allegation that he earned only $800 a month and cleared only $37. At the same time, he was purchasing the equipment he alleged was stolen in 1997 and 1998.
 

 Mr. Idris testified at trial that in 1998 he owned property on Bundy Road in New Orleans; however, in a prior sworn statement given in this proceeding, he testified that the Bundy Road property was owned by his brother, Fary Eboh, and that his brother received the rent from the property. Mr. Idris testified in the sworn statement that he managed the property for his brother and lived in one of the units. When questioned about this statement at trial, Mr. Idris denied recalling the statement, and denied that the property was in his brother’s name. The Act of Sale for the property, introduced in connection with Mr. Idris’ trial testimony, named Fary Eboh as the purchaser throughout the document and on the signature line. At trial, Mr. Idris claimed this was an error, but admitted that he signed the above the signature line that read “Fary Eboh”. He denied that he was Fary Eboh, and claimed that the notary erroneously provided the name Fary Eboh instead of Fab Idris, allegedly because the names sounded alike. He also claimed that another notary made the same mistake with respect to property on Curran Road in New | (¡Orleans. Mr. Idris also claimed that the notary made a mistake in identifying the purchaser as having never been married, when he had been married and divorced. During cross-examination, Mr. Idris admitted that, “I have, yes, I held myself as Fary Eboh after when this thing [Curran Road sale] was signed and I brought it and then it was signed and I bring it to somewhere and they want to know — they want to — after I show them that, hey, I’m Fab Idris, I’m Fab Idris. But it was an error in that thing.” He admitted that when he bought the property, he indicated that he was Fary Eboh, but then testified that he did not recall if he said that to the notary, or to anyone else. He then denied having any knowledge of how the two notaries obtained the name Fary Eboh. Ultimately, the trial judge asked Mr. Idris if he had a brother named Fary Eboh, to which Mr. Idris replied, “No,” and denied having told counsel for Allstate that he had such a brother. Counsel then presented Mr. Idris with the following language from Mr. Idris’ sworn statement: “I was making money but the rental property was not in my name. It is
 
 *1111
 
 in the name of my brother ... Fary. “Furthermore, Mr. Idris was presented with his sworn deposition in which he was asked if he had a brother, Fary, to which Mr. Idris replied, “Yeah,” and verified the spelling of Farjfs name.
 

 Mr. Idris also admitted on cross-examination that the 1997 and 1998 State Farm theft claims were made in the name of Fary Eboh, who was the named insured under the State Farm policy. The settlement checks were made out to Fary Eboh, but Mr. Idris admitted that he cashed them. The trial court then noted these multiple incidents in which Mr. Idris held himself out to be Fary Eboh, although he had denied under oath having done so.
 

 With respect to the burglary that is the subject of the instant litigation, Mr. Idris admitted that although he locked the burglar bars on his front door, he did not 17lock the front door, although he testified that he lived in a “bad neighborhood”, where, he testified, three murders had been committed since August of 2005.
 

 Ray William Talley testified at trial that he was the notary for an Act of Cash Sale from the Secretary of Housing and Urban Development to Fary Eboh for the Curran Road property. Mr. Talley testified that prior to execution of the Act of Sale, Mr. Idris identified himself as Fary Eboh, and told him that he had never been married. According to Mr. Talley, it was his business practice to require proof that the person who signs a notarial act is, in fact, the person named therein. Mr. Talley denied that he erroneously entered the name as Fary Eboh.
 

 Mr. Idris called Althea Williams Folse, the Allstate adjuster assigned to his claim. She testified that she received Mr. Idris’ claim and the police report indicating that a theft had been reported by Mr. Idris. She testified that the policy requires the insured to attend an examination under oath and sign his sworn statement, which Mr. Idris refused to do. He also refused to comply with Allstate’s request to provide his accounting records, bills, invoices, and other vouchers, or certified copies, that the insurer reasonably requests to examine and copy.
 

 Officer Patrick Hartman, the police officer who investigated the alleged burglary, testified that he has been a crime scene investigator for over eleven years. When he arrived at the Idris home, he observed a broken door or iron gate and ransacked premises. He called a crime lab unit to the scene. Mr. Idris did not call the crime lab investigator to testify at trial.
 

 Officer Hartman flagged the police report, noting “Idris stated that he had homeowner’s insurance.” He testified that he flags reports in this manner whenever it is obvious to him that it is a case of insurance fraud.
 

 |sFrom our review of the record in its entirety it is abundantly clear that the trial court’s conclusions are reasonable and supported by the record. Therefore, we affirm the judgment in favor of the defendant/appellee, Allstate Insurance Company.
 

 AFFIRMED.